Vicki FULKERSON, et al.

v.

COMMISSIONER, MAINE DEPARTMENT OF HUMAN SERVICES.

Supreme Judicial Court of Maine.

Argued March 15, 1993.

Decided July 15, 1993.

---

Jack Comart (orally), Pine Tree Legal Assistance, Inc., Augusta, for plaintiffs.

Steven R. Davis (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, COLLINS, RUDMAN and DANA, JJ.

WATHEN, Chief Justice.

Plaintiffs, eight named Medicaid recipients, appeal from a summary judgment granted in favor of the Department of Human Services (hereinafter "DHS") by the Superior Court (Kennebec County, *Alexander, J.*). Plaintiffs contend that the court erred in finding that certain co-payment rules adopted by DHS are valid and are not arbitrary, capricious, or unlawful. Finding no error, we affirm the judgment.

In 1991 the Legislature directed DHS to require Medicaid recipients to pay part of certain medical services. P.L.1991, ch. 622, § M-11. DHS subsequently issued proposed co-payment rules in January of 1992. DHS published notice of the proposed rules and submitted fact sheets to the Legislature in accord with the Maine Administrative Procedure Act. 5 M.R.S.A. §§ 8053-A, 8064 (Supp.1992).[1] Before the proposed rules took effect, the Legislature repealed its authorization to impose co-payments and enacted a more limited authorization. P.L.1991, ch. 780, § R-9.[2] The new authorization differed from the former in that it permitted co-payment rather than requiring it, required co-payment caps or the exclusion of some services from co-payment, and required that co-payment be nominal in amount. DHS again proposed rules and published public notice. Although the proposed rules included new provisions for co-

---

1. At the time of giving notice of rulemaking under section 8053 or within 10 days following the adoption of an emergency rule, the agency shall provide to the Legislature, in accordance with subsection 3, a fact sheet providing the information as described in section 8057-A, subsection 1.

   A. If an agency determines that a rule which it intends to adopt will be substantially different from the proposed rule, it shall provide the Legislature with a revised fact sheet with the information defined in section 8057-A, subsection 1, as it relates to a substantially different rule. The revised fact sheet shall be provided to the Legislature in accordance with subsection 3.

   5 M.R.S.A. § 8053-A(1)(A) (Supp.1992).

2. The department shall achieve savings in fiscal year 1992-93 by designating co-payments up to the following amounts per service per day or by reducing reimbursement, or both, to some or all of the following....

   Any co-payments adopted pursuant to this section must be nominal in amount with monthly limits or exclusions per service category. Any reduction in reimbursement to providers or imposition of co-payments must consider the need to maintain provider participation in the Medicaid program to the extent required by 42 United States Code, Section 1392(a)(30)(A) or any succession thereto.

   P.L.1991, ch. 780, § R-9.

payment caps, DHS did not submit a revised fact sheet to the Legislature.

Plaintiffs filed a complaint in the Superior Court seeking to enjoin DHS from instituting the co-payment rules on the basis that they were adopted in violation of 5 M.R.S.A. § 8064 (Supp.1992).[3] The Superior Court applied the standard of review prescribed by 5 M.R.S.A. § 8058 (1989)[4] and held that the rules were valid because the procedural error, if any, was not substantial and the rule would not have changed significantly in the absence of any error.

■ Plaintiffs argue that 5 M.R.S.A. § 8064 invalidates the co-payment rules because DHS has no authority to adopt the rules absent compliance with the statute. The DHS co-payment provisions constitute "rules" within the meaning of 5 M.R.S.A. § 8002(9)(A) (1992).[5] Consequently, courts must apply the standard of judicial review specified by 5 M.R.S.A. § 8058. *See, e.g., Cumberland Farms Northern v. Maine Milk Comm'n*, 428 A.2d 869, 873 (Me.1981) (applying the section 8058 standard of review after adjudging rules setting mini-

mum prices for the sale of milk as rules within the meaning of 5 M.R.S.A. 8002(9)(A)). Section 8058 establishes a harmless error standard similar to that employed in ordinary civil litigation, *see* M.R.Civ.P. 61,[6] and modifies the prohibition set forth in section 8064.

■ DHS was granted authority by the Legislature to impose co-payments and institute co-payment caps. Any error in the rulemaking process involved in the present case was at most procedural. In amending section 8058 in 1985, the Legislature substituted a reference to procedural invalidity for language referring to improper adoption. P.L.1985, ch. 680, § 6. The accompanying Statement of Fact noted that the amended sections "limit the procedural grounds that automatically invalidate a rule" but that "[v]iolation of those procedures affecting public participation in the rule-making process, or the specific time limits for rulemaking, will still void a rule." L.D. 2341, Statement of Fact (112th Legis.1985). We conclude that the Legislature intended to narrow the circumstances in which procedural error would automatically

3. The statute provides that:

Except for emergency rules, as provided in section 1860, subsection 6, an agency may not adopt any rule unless the agency has complied with the provisions in sections 8053-A and 8060, which includes legislative review of the rule.

5 M.R.S.A. § 8064 (Supp.1992).

4. The statute governing judicial review of rules provides, in pertinent part:

... Insofar as the court finds that a rule exceeds the rule-making authority of the agency, or is void under section 8057, subsection 1 or 2, it shall *declare the rule invalid.* In reviewing any other procedural error alleged, the court may invalidate the rule only if it finds the error to be substantial and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred. If the court finds that the rule is not procedurally invalid and not in excess of the agency's rule-making authority, its substantive review of that rule shall be to determine whether the rule is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. The phrase "otherwise in accord with the law" shall apply only to the review authorized in the preceding sentence and shall not be con-

strued so as to limit or replace in any way section 8003. In the event that the court finds that an agency has failed to adopt a rule as required by law, the court may issue such orders as are necessary and appropriate to remedy such failure.

5 M.R.S.A. § 8058 (1989).

5. "Rule" means the whole or any part of every regulation, standard, code, statement of policy, or other agency statement of general applicability, including the amendment, suspension or repeal of any prior rule, that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, or describes the procedures or practices of the agency.

5 M.R.S.A. § 8002(9)(A) (1992).

6. No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

M.R.Civ.P. 61.

**664**

invalidate a rule. Those circumstances in which invalidation is automatic principally involve a denial of public participation,[7] which is distinguishable from the failure to provide a revised legislative fact sheet as in the present case. The Superior Court did not err in finding that any error was procedural, that it was not related to matters of central relevance, and that there was not a substantial likelihood that the rules would have been significantly changed had DHS filed a revised fact sheet with the Legislature.

■ Plaintiffs also argue that the court erred in finding that the co-payment caps met the requirement that co-payments be "nominal." Plaintiffs rely on the cumulative impact that the co-payments may have on the recipients of multiple Medicaid services. We conclude, however, that the Superior Court did not err in adopting the DHS interpretation that the Legislature intended only that the caps be nominal relative to the actual cost of the services themselves. The legislative history does not reveal a contrary legislative intent on the meaning of "nominal," and the federal rules applying a similar restriction do not support plaintiffs' position even by analogy. *See* 42 C.F.R. §§ 447.53, 447.54(d) (1992).[8]

The Superior Court did not err in finding that plaintiffs failed to establish that the co-payment rules are arbitrary, capricious, or unlawful.

The entry is:

Judgment affirmed.

All concurring.

---

7. 5 M.R.S.A. § 8057 (1989) specifies the violations that automatically invalidate rules and provides that insubstantial deviations from requirements for rulemaking shall not invalidate the rule.

8. For example, federal Health Care Finance Administration rules allowing states to impose co-payments on Medicaid recipients so long as the co-payments are "nominal" do not require that

states adopt a co-payment cap in order to meet the requirement of nominality. *Fulkerson v. Dep't. of Human Services,* 802 F.Supp. 529, 536–37 (D.Me.1992). Neither has the federal requirement of "nominal" in terms of individual co-payment charges been interpreted as relating to the actual income of Medicaid recipients insofar as taking into account disparities in benefits paid to recipients from one state to another. *Potter v. James,* 499 F.Supp. 607, 613 (N.D.Ala. 1980).