LIPEZ, Circuit Judge, dissenting.
From the vantage point of hindsight, my colleagues conclude that a clarifying interpretation of federal law rendered for the first time in 2015 cleanses an improper state administrative process that occurred five years earlier. I cannot agree that we should ignore the flaws in the rulemaking process and disregard the purpose of the bypassed procedures: to ensure that the public and Legislature understand, and have an opportunity to comment on, important changes in the law. In my view, the procedural irregularity requires us to *53 affirm the district court's conclusion that a four-year filing deadline applies to Ms. S.'s claims. Accordingly, I respectfully dissent.
I.
The statute-of-limitations question at the heart of this appeal has perplexed both the parties and the courts from the outset of the case. In the prior round of decisions, the district court and our panel were challenged by an inadequate record and -- as it turns out -- the parties' incorrect assumptions about the substance of the two provisions of the federal Individuals with Disabilities Education Act ("IDEA") that govern the timeline for requesting a hearing on the claimed denial of a "free appropriate public education" ("FAPE"). See Ms. S. v. Reg'l Sch. Unit 72, 829 F.3d 95 (1st Cir. 2016) (" Ms. S. I"); 20 U.S.C. §§ 1415(b)(6)(B), 1415(f)(3)(C). To some extent, those problems have now been addressed. With respect to the IDEA, the thoughtful analysis by the Third Circuit in G.L. v. Ligonier Valley School District Authority, 802 F.3d 601, 611-26 (3d Cir. 2015), persuasively demonstrates that the IDEA has a single two-year statute of limitations. Accord Avila v. Spokane Sch. Dist. 81, 852 F.3d 936, 940-44 (9th Cir. 2017). As for the Maine administrative process, the parties on remand "compiled and submitted a more complete record of the rulemaking proceedings" that underlie the state law question. Ms. S. v. Reg'l Sch. Unit 72, No. 2:13-cv-453-JDL, 2017 WL 5565206, at *5 (D. Me. Nov. 20, 2017) (" Ms. S. II").
The new light shed by the recent IDEA interpretation and the expanded state administrative record does not, however, justify the outcome reached by my colleagues. Indeed, as I shall explain, it is now even more apparent that the limitations provisions were unclear for a substantial time. The lack of clarity contributed to the improper method by which the Maine Department of Education ("MDOE" or "the Department") attempted to change the filing deadline under Maine's Unified Special Education Regulation ("MUSER") for claims asserting denial of a FAPE. That flawed attempt should prevent us from finding Ms. S.'s claims time-barred.[10]
A. The Timeline for FAPE Challenges
Like the majority, I agree with the fully elaborated conclusion of the Third Circuit that the two IDEA provisions pertinent to this case set a single limitations period for requesting a FAPE due process hearing. See 20 U.S.C. § 1415(b)(6)(B), (f)(3)(C). I also agree that the equivalent provisions in Maine's analogue to the IDEA -- MUSER -- are intended to track the federal law. See Me. Code R. 05-071, Ch. 101 ("MUSER") §§ XVI.5.A(2), XVI.13.E.[11] In other words, contrary to the position accepted by both parties in the prior appeal, neither the IDEA nor MUSER has a separate *54 "lookback" provision that limits the remedy for a violation of the FAPE requirement to the two years preceding the reasonable discovery date for the violation. See G.L., 802 F.3d at 604-05 (observing that " § 1415(b)(6)(B) is simply an inartful attempt to mirror § 1415(f)(3)(C)'s two-year statute of limitations"). Rather, the remedial period has no fixed limit, but the plaintiff must file a FAPE challenge within two years of the date the alleged violation was, or reasonably should have been, discovered. See id. at 616, 620-21.
Under the IDEA, the filing deadline has been two years since Congress first adopted a limitations period in 2004. Id. at 608-09. Although the text of the equivalent MUSER provisions largely mirrors the federal law, their stated timelines have not always aligned.[12] When the Maine Legislature first enacted limitations provisions in MUSER in 2007, it departed from federal law by providing for four-year time periods.[13] In 2009, however, the MDOE initiated the process for amending several MUSER provisions, including changing the "statute of limitations for due process hearings" to conform to "the federal standard of two years." Notice of Agency Rule-making Proposal, Nov. 24, 2009.
In the notices of the proposed amendments submitted by the MDOE to the Secretary of State, as required by the Maine Administrative Procedure Act ("MAPA"), see Me. Rev. Stat. Ann. tit. 5, § 8053, the Department stated that the change in timing was being proposed "pursuant to [its] intent to not exceed minimum federal requirements and to address cost containment."[14] The materials submitted with the notices are particularly significant to this case. I reproduce below the district court's clear and concise summary of the documents, noting that the district court used the descriptive terminology for the two limitations provisions ("look-back term, for § XVI.5.A(2), and "filing limitation" or "filing deadline," for § XVI.13.E, that the courts and parties previously used to distinguish them:
Each notice was accompanied by a version of MUSER with strikeouts and underlines indicating the proposed changes. In the proposed changes, the Look-Back Term's strikeouts and underlines indicated a change from four years to two, while the filing deadline provision was untouched. Additionally, MUSER contains an Appendix with a document entitled "Notice of Procedural Safeguards," which is used to instruct the public about the rights guaranteed under MUSER, and it was also revised to reflect the proposed changes. The Notice of Procedural Safeguards contained strikeouts and underlines that corresponded to the proposed change to the Look-Back Term from four years to two years:
*55 The due process hearing request must allege a violation whether a State or federal cause of action under the IDEA that happened not more than four two years before you or the SAU [school administrative unit] knew or should have known about the alleged action that forms the basis of the due process hearing request .
The Filing Limitation was addressed in the "Due Process Hearing Procedure" section of the Notice of Procedural Safeguards. It indicated two non-substantive corrections and did not show any change to the four-year Filing Limitation:
You or the SAU must request an impartial hearing on a due process hearing request within-four year s of the date you or the SAU knew or should have known about the issue addressed in the hearing request .
Thus, both the MUSER Filing Limitation and the explanation of that rule in the Notice of Procedural Safeguards did not indicate any changes to the substance of the four-year Filing Limitation.
Ms. S. II, 2017 WL 5565206, at *3 (footnote omitted) (citations omitted); see also Ms. S. I, 829 F.3d at 103.
The inconsistent treatment of the two provisions also appeared on the form used to obtain comments from members of the public. The comments sheet characterized the proposed change in timing as follows: "§ XVI(5)(A)(2) The statute of limitations for due process hearings will be changed to the federal standard of two years, Page 161 ." Ms. S. II, No. 2:13-cv-00453-JDL (D. Me.), Dkt. No. 71-1, at 12 (emphasis in comments document); see also Ms. S. II, 2017 WL 5565206, at *3. Page 161 of the provisional adoption proposal displayed the change to two years for § XVI(5)(A)(2), i.e., the provision that came to be known as the "lookback term." See id.; see also Joint App'x at 175. Meanwhile, § XVI.13.E -- the filing deadline -- appeared in the same document on page 171, and it remained unchanged at four years. See 2017 WL 5565206, at *3 ; Joint App'x at 177.
The Maine Legislature approved the MUSER rule changes in 2010, having reviewed only versions of the proposed revisions that retained the four-year filing limitation in § XVI.13.E. See Ms. S. I, 829 F.3d at 104. Then, without any process to alert either the public or the Legislature that it was departing from the text shown in the provisional adoption document, the MDOE adopted a final amended version of MUSER in which the timing in § XVI.13.E was reduced to two years. See id. Appellants describe this action as a "correction" that was made to remedy "a clerical oversight." DOE Br. at 5, 11. A proposal to increase the timeframe for due process hearings was rejected the following year, see Ms. S. II, No. 2:13-cv-00453-JDL (D. Me.), Dkt. 71-13, at 33-36, and both § XVI(5)(A)(2) and § XVI.13.E thus currently contain two-year periods.
B. MUSER's Timing Provisions in Practice
The question at the core of this appeal is whether the MDOE's adoption of a two-year filing deadline in § XVI.13.E was a permissible correction of an oversight or a substantive change that required adherence to formal administrative procedures. Put another way, is the two-year limitations period currently stated in § XVI.13.E invalid because it was enacted unlawfully?
Although my colleagues purport not to reach the "issue of whether the MDOE complied with MAPA in promulgating the 2010 amendments to MUSER," they implicitly accept the oversight rationale. They conclude that the MDOE intended from the outset of the 2009-2010 amendment *56 process to revise both MUSER provisions to reflect a single two-year deadline for due process hearing requests. Consistency was necessarily the objective, they suggest, because MUSER -- like the IDEA -- contains one limitations period that applies to both provisions. Their position is that, because the two provisions operate in tandem, approval of the two-year period in § XVI.5.A(2) (the "lookback term") also constituted approval of the same timeframe for § XVI.13.E (the "filing deadline"). Accordingly, the MDOE's final version of MUSER in 2010 effected the Legislature's intent and corrected a minor drafting error.
The primary problem with the majority's conclusion is the failure to account for the uncertainty that long surrounded the two distinctly worded provisions in both the IDEA and MUSER. Even if my colleagues are correct that the MDOE intended in 2009-2010 to change both timing provisions -- despite all documentary evidence to the contrary -- that intention would not cure the problems with the rule-making process. Inexplicably, the majority gives no consideration at all to what the public and Legislature would have reasonably understood in 2009 about the meaning of each provision. Yet, as the Third Circuit highlighted in unraveling the history of the two IDEA sections, the provisions' differing language had long posed interpretive difficulties. See G.L., 802 F.3d at 610-12.
The sequentially first provision -- i.e., the so-called lookback provision -- allows a remedy based on actions that occurred "not more than two years before the date the parent ... knew or should have known about" the challenged action. MUSER § XVI.5.A(2) (emphasis added); see also 20 U.S.C. § 1415(b)(6)(B). Meanwhile, the second provision sets the filing deadline (for requesting a hearing) at two years after the discovery date, see MUSER § XVI.13.E; 20 U.S.C. § 1415(f)(3)(C). As the Third Circuit noted, "[t]he differences in the language of these provisions and the fact that they appear to move in opposite directions from the reasonable discovery date, has given rise to confusion." G.L., 802 F.3d at 610. Indeed, in determining that the two IDEA provisions "reflect the same statute of limitations," id. at 612 (internal quotation marks omitted), the Third Circuit acknowledged that "applying the plain language of the text would force us to give § 1415(b)(6)(B) a meaning that 'turns out to be untenable in light of the statute as a whole.' " Id. at 612 (quoting King v. Burwell, --- U.S. ----, 135 S.Ct. 2480, 2495, 192 L.Ed.2d 483 (2015) ). In other words, on their face, the two provisions do not align, and only the court's close examination of context and legislative history revealed their conformity. See id. at 611-12.
In Maine, the same discrepancy in MUSER's language led to the notion of two independent timeframes: the "lookback period" of § XVI.5.A(2) and the "filing deadline" of § XVI.13.E. The wide acceptance of that nomenclature -- and the substantive distinction it denotes -- informed the first round of proceedings in this case. As the MDOE observes, the two experienced special education attorneys who represented the opposing parties treated those terms as "commonly used and ha[ving] distinctly different meanings." MDOE Br. at 24. In addition, there is no challenge in the record to Ms. S.'s representation that attorneys in the field in Maine had consistently treated the two provisions as distinct at least since an MDOE hearing officer adopted that construction in 2011. See Ms. S. II, No. 2:13-cv-00453-JDL (D. Me.), Dkt. 22-5, at 9 (Hearing Officer's Order on Application of Statute of Limitations, Sept. 1, 2011); id. at 17 (referring to "the IDEA's two year lookback provision"). Nor have appellants rebutted Ms. S.'s assertion that the 2011 *57 interpretation was consistently followed thereafter by other Maine hearing officers. To the contrary, the school district acknowledges that "the dichotomy offered by the hearing officer in 2011 [was] a reading that seemed relatively consistent with some components of the language in question."
The MDOE attempts both to discredit the hearing officer's interpretation and to disclaim any responsibility for the subsequent reliance on it by parties and other hearing officers. The Department emphatically denies that it necessarily was aware of the decision or had an obligation to correct the mistaken view of the law. These protestations defy common sense. The possibility that the Department remained unaware for years of an "incorrect" interpretation of an important component of the statutory scheme for which it was responsible strikes me as absurd. Moreover, even if the Department technically had no affirmative obligation to clarify the law, its failure to do so is inexplicable if, in fact, the MDOE always believed the MUSER timing provisions established a single limitations period.
In any event, regardless of the MDOE's unspoken intention with respect to the MUSER amendments proposed in 2009, the history makes plain that it was far from evident to practitioners and decisionmakers in the field -- i.e., the "experts" charged with day-to-day advocacy or dispute resolution involving the IDEA and MUSER -- that the two provisions stated the same limitations period. Indeed, at least by 2011, they had the opposite understanding.
C. The Need to Fulfill MAPA Requirements
The interpretive confusion documented above has great significance. It means that the MDOE was not free to change the timing in § XVI.13.E (the "filing deadline") from four years to two years without engaging in the formal administrative process applicable to major substantive rule changes.[15] That is so because, given the retention of "four years" in the proposed text of § XVI.13.E disseminated throughout the 2009-2010 rulemaking proceedings, the public and Maine Legislature lacked the required clear notice that the MDOE was proposing a single two-year limitations period. Indeed, the repeated presentation of four years as the filing time limit would have bolstered the view that the provisions contained independent timelines. Put another way, the MDOE owed the public and the Legislature a clear statement of its intention to reduce by one-half the time allowed for seeking a FAPE due process hearing.[16] Instead, the Department effectively told the public that the four-year deadline was to remain unchanged.
The MDOE asserts that the comments submitted during the 2009 administrative proceedings indicated that all concerned understood that the proposal to limit the "statute of limitations" covered both provisions. The Department emphasizes that none of the individuals who commented on *58 the proposed amendments at public hearings held by the MDOE and the Legislature's Education Committee suggested that there was more than one statute of limitations. Hence, the Department posits, no one was misled by the flawed notices and supplemental materials, and the errors in the administrative process were therefore harmless.
This effort to minimize the errors is both unpersuasive and unacceptable. The shorthand label "statute of limitations" may reasonably be applied to a "limitation" on the remedial period.[17] Moreover, the fact remains that every relevant document depicted a revision only to the provision that was treated thereafter as a limitation on the remedial period. Hence, there was no reason to expect comments from the public on a different limitations provision that ostensibly was not being changed. See Ms. S. II, 2017 WL 5565206, at *9 ("The absence of comments explicitly addressing the Filing Limitation change from four years to two years is not surprising given that the proposed MUSER rules did not describe such a change in the notice or in the Filing Limitation rule, nor did the proposal direct commenters to the page the Filing Limitation appeared on as it did with respect to the Look-Back Term."). The MDOE's casual, unilateral change to such a significant element of the MUSER scheme was thus patently improper.
As well, the MDOE's contention that the inconsistency was merely an oversight pushes against the bounds of plausibility. The Notice of Procedural Safeguards prepared by the Department and disseminated during the 2009-2010 proceedings specified two non-substantive corrections for § XVI.13.E (the "filing deadline"), but it failed to show a change in the number of years. It is difficult to see how a "mistaken" retention of the four-year language could have escaped MDOE attention when the Department must have focused directly on the provision to make the non-substantive revisions. See Ms. S. II, 2017 WL 5565206, at *10 ("A reader could logically conclude from the Notice of Procedural Safeguards that the drafters had looked at the provision, considered what changes were necessary, and decided to make only minor, non-substantive adjustments."). Hence, even if some individuals within the Department viewed the two provisions to state the same deadline, the drafting inconsistency is compelling evidence that there was no uniform understanding even within the MDOE. It is therefore unsurprising that practitioners in the field subsequently accepted the hearing officer's assumption of two independent timelines.
To bolster its oversight claim, and in rejecting the need for formal MAPA procedures, the MDOE points out that the same type of "clerical" error accounts for the different time periods contained in the original, 2007 versions of the limitations provisions. The Department reports that, after final adoption of the MUSER rules in 2007, "the Department discovered several inconsistencies that had slipped through in the rewriting process." MDOE Reply Br. at 6. One such inconsistency, the MDOE explains, was retention of the originally *59 proposed two-year limitations period in § XVI.13.E (the "filing deadline") instead of the four-year period that the Legislature had expressly directed for § XVI.5A(2) (the "lookback term"). The MDOE rectified the inconsistency through a new rulemaking in 2008, explaining in public materials that "[t]he purpose and scope of this rulemaking was to make several corrections not addressed in the [2007 proceedings] to make consistent ... the statute of limitations at four years in appropriate sections." MDOE Reply Br., Supp. App'x at 21 (quoting Comments and Responses to Proposed Amendments Chapter 101 Public Hearing, Nov. 13, 2007). The change to § XVI.13.E, replacing "two years" with "four years" for the filing deadline, was adopted in April 2008 -- i.e., about a year and a half before the MDOE initiated the MUSER rulemaking proceedings underlying this case.
The MDOE cites the 2007-2008 history as proof that it always construed the timeframes in the two provisions to refer to the same deadline for filing a request for a due process hearing, and it implies that the earlier corrective process validates the "technical, conforming correction" it made in 2010. But regardless of what the MDOE's actions in 2007 and 2008 reveal about the Department's intentions at that time with respect to the two provisions,[18] its handling of the earlier inconsistency cannot legitimize the subsequent flawed process. Among other factors, the earlier change extended the deadline specified in the regulation for requesting a due process hearing; now, the MDOE seeks to cut off remedies for students with disabilities. Moreover, the MDOE in 2007-2008 did not unilaterally amend the provision approved by the Legislature. It gave notice to the public of the proposed revision to § XVI.13.E and sought comments. Given the handling of the 2007-2008 "oversight" in the recent past, the Legislature and knowledgeable members of the public in 2009 could fairly presume that the lack of uniformity in the proposed text was intentional, even if it was not.
It bears repeating that confusion abounded concerning the two MUSER provisions and their federal counterparts. The MDOE nonetheless made a significant behind-the-scenes change to a major substantive rule without adhering to the MAPA procedures that are meant to ensure that the public and Legislature are informed of such revisions and have the opportunity to raise concerns. See Ms. S. II, 2017 WL 5565206, at *8-11. That improper process cannot be cured by relying on the Third Circuit's clarifying interpretation of the IDEA more than five years later. See Ms. S. I, 829 F.3d at 108 (noting the Maine Law Court's conclusion that the "circumstances in which invalidation [of a rule] is automatic principally involve a denial of public participation" (quoting Fulkerson v. Comm'r, Me. Dep't of Human Servs., 628 A.2d 661, 664 (Me. 1993) ) (alteration in original) ); id. at 109 (noting that "the Legislature at least must have had the opportunity to review the substance of a finally adopted rule").
My colleagues alternatively state that, even if procedural errors rendered the revision of § XVI.13.E void under MAPA, they would conclude that MUSER lacked "a valid 'explicit time limitation' " and would therefore impose the federal default of two years for the filing limitation. See Maj. Op. § II.C.2 (quoting 20 U.S.C. § 1415(b)(6)(B), (f)(3)(C) (emphasis added by majority) ). But there is no justification *60 for such a presumptuous step -- that is, overriding a state's prevailing, properly implemented limitations period to the detriment of the individuals the statute is meant to protect. The IDEA does not require lockstep between a state's filing limitations period and the federal timeline, and, if the change made to § XVI.13.E by the MDOE in 2010 is invalid, the four-year deadline remains in place.
Moreover, fairness requires our adherence to the longer filing limitations period. Section XVI.13.E, the provision unilaterally amended by the MDOE, has always been understood to establish the deadline for requesting a due process hearing. Even if we now understand that § XVI.5.A(2) is another statement of that same deadline, rather than an independent "lookback term," we cannot simply disregard MAPA's notice and comment requirements for amending the "filing deadline" in § XVI.13.E. Put differently, this panel's clarifying ruling in this case that federal and state law each set a single limitations period cannot undo the flaws in 2009-2010 that -- as the district court properly found -- invalidate the MDOE's attempt to reduce the limitations period for requesting a due process hearing. We cannot undo with a few strokes of the pen the confusion or improper administrative proceedings of the past.
The majority skims over the departure from MAPA's requirements, concluding that the unauthorized change to § XVI.13.E must be given effect in this case simply because the MDOE has now explained why a two-year timeframe is appropriate. That conclusion fails to respect the objective of public participation reflected in Maine's detailed administrative scheme. If the MDOE wants to change the governing four-year statute of limitations, it must do so the right way. Unlike my colleagues, I cannot condone the MDOE's improper adoption of the reduced filing deadline, contrary to the public disclosures required by law, or the resulting unfair refusal to consider Ms. S.'s claims concerning her son's ninth and tenth grade years. I therefore respectfully dissent.

Because I conclude that, notwithstanding the new arguments offered by the MDOE, Ms. S.'s claims are not barred by a regulatory filing deadline, I do not address the issues of waiver or law of the case.

Section XVI.5.A(2) largely incorporates the language of 20 U.S.C. § 1415(b)(6)(B) and currently provides that a "due process hearing request must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process hearing request."
Section XVI.13.E closely tracks the language of 20 U.S.C. § 1415(f)(3)(C) and currently provides that "[a] parent or agency must request an impartial hearing on their due process hearing request within two years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the due process hearing request."

Although the IDEA and its associated regulations provide the default provisions governing due process hearings, states are permitted to vary some requirements -- including, specifically, the time limitations at issue in this case. See 20 U.S.C. § 1415(b)(6)(B), (f)(3)(C).

Technically, MUSER initially provided for a four-year period in one of the two provisions at issue and a two-year period for the other, but the latter was "corrected" to four years in 2008. That change will be discussed below as part of my analysis.

Two notices were submitted because the MDOE was proposing both an emergency rule change through an accelerated process and a permanent rule change. The proposals were identical in substance but subject to different procedures. See Ms. S. I, 829 F.3d at 105-06. The Secretary of State is charged with publishing notice of the date of the public hearing on a proposed rule. See Me. Rev. Stat. Ann. tit. 5, § 8053.

The process for adopting a "major substantive rule" -- such as the changed filing limitation at issue here -- is described in detail in Ms. S. I. See 829 F.3d at 105-06.

The MDOE acknowledges the importance of providing notice to the public of changes in the limitations period. It points out that the Department could have adopted the emergency version of the rule without a comment period, but "because the Department recognized that the parents of children with disabilities and their advocates would react strongly to what they viewed as a reduction in their rights, the Department elected to provide a public hearing and comment period on the emergency rule as well as the permanent rule." MDOE Br. at 3 n.2.

As we observed in Ms. S. I:
[T]he phrase "statute of limitations" is used without definition by the MDOE in its public notice statement, by the MDOE Commissioner in her testimony to the Maine Legislature, by many additional witnesses and advocates, and by the Legislature itself. Both the filing limitation and look-back term involve time restrictions, and both periods were originally four years while the parallel federal periods are both two years. Hence, the "statute of limitations" label could be used to describe the filing limitation, the look-back term, or both.
829 F.3d at 109.

The "correction" does not necessarily show that the MDOE viewed the two provisions to state the same limitations period; the objective just as easily could have been to adopt a four-year period for each of two independent provisions.