STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-19-32

MARC GORAYEB MD,

    Petitioner,

v.

MAINE BOARD OF LICENSURE IN
MEDICINE et al.,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER
(M.R. CIV. P. 80C)**

## INTRODUCTION

Petitioner Marc Gorayeb is a New Hampshire attorney who also held a medical license in Maine. In 2019, Respondent Maine Board of Licensure in Medicine ("the Board") denied Petitioner's license renewal application after applying 02-373 C.M.R. ch. 1, § 9 ("the Competency Rule")—a then-new licensure rule governing physicians who had not recently engaged in the active practice of clinical medicine. In this rule 80C appeal, Petitioner challenges the facial validity of the Competency Rule as well as the Board's adjudicatory decision to deny the renewal of his medical license. Petitioner is representing himself pro se and the Board is represented by Attorney Jonathan R. Bolton. The matter is now fully briefed and will be decided without oral argument pursuant to M.R. Civ. P. 7(b)(7) and 80C(l).

## BACKGROUND

### The Competency Rule.

The Competency Rule was added to the Board's rules in 2017 as part of a larger rulemaking process that repealed and replaced the entirety of Chapter 1

(the chapter governing physician licensure). A.R. 379-81, 385, 424.

In its original version, the proposed Competency Rule would have required—as a condition of renewing a medical license—that a physician participate "in the active clinical practice of medicine for at least three (3) months of the twelve (12) months prior to filing the renewal application." A.R. 406. After notice and comment, the rule was revised, partly in response to a comment submitted by the Maine Medical Association (MMA). A.R. 459-60, 479.

MMA expressed opposition to the requirement on the grounds that it was overly restrictive and did not account for circumstances in which a physician was unable to practice for several months due to illness or other reasons. A.R. 459-60. MMA recognized, however, "that physicians who have been out of practice for years should have to meet additional standards before getting back into practice" and suggested alternatives, such as increased monitoring and supervision. A.R. 460.

The Board accepted MMA's comment in part and articulated its reasons for imposing the requirement:

> The Board included this requirement in the proposed rule to ensure that physician applicants who have not been actively practicing clinical medicine are identified and, when necessary, are required to obtain updated education and/or training. The Board understands that clinical skills rapidly decline following a break from clinical medicine, which poses a risk to the safety of the public should an applicant or a licensee seek to return to clinical practice after an extended period and/or without remedial education and training. The Board also understands that there are many physicians with "active" medical licenses who renew their licenses every two years and have not practiced clinical medicine for many years, which also poses a risk to the public.

A.R. 460.

While the Board continued to support the rule, it agreed that some revisions were warranted. It thus amended the proposed rule to allow for a "case by case" evaluation of the competency of licensees who have not engaged in clinical practice during the 24 months immediately preceding the filing of a

2

license renewal application. A.R. 460-61.

Due to the substantive nature of the amendments, the Competency Rule underwent an additional round of public comment. A.R. 479. The Board published the revised rule on its website on August 29, 2017. A.R. 479. It sent notice through its mailing list to interested persons on August 30, 2017. A.R. 479. The Secretary of State published the rulemaking notice in its rulemaking bulletin and in five Maine newspapers on August 30, 2017. A.R. 418, 479. And Public comment was reopened until September 29, 2017. A.R. 479.

The Board received one public comment, which criticized the Competency Rule on the grounds that it was vague and gave the Board too much discretion to determine competency. A.R. 464. The Board rejected the comment and adopted the rule on October 10, 2017. A.R. 424-25. The rule went into effect on December 23, 2017. A.R. 424, 481.

In Chapter 1, Section 8(3) of the final rule, the Board sets forth criteria for renewing an active license, including a demonstration of "continuing clinical competency as required by this rule." 02-373 C.M.R. ch. 1, § 8(3)(A)(4). Section 9 then states as follows:

**SECTION 9. CONTINUING CLINICAL COMPETENCY REQUIREMENTS**

1. **Requirements**

   A. **General**

   If an applicant has not engaged in the active practice of clinical medicine during the 24 months immediately preceding the filing of the application, the Board may determine on a case by case basis in its discretion whether the applicant has adequately demonstrated continued competency to practice clinical medicine.

   B. **Demonstrating Current Competency**

   The Board may require an applicant to submit to any competency assessment(s) or evaluation(s) conducted by a program approved by the Board. If the assessment/evaluation identifies gaps or deficiencies, the applicant must complete an educational/remedial program to address them. The Board retains the

3

discretion regarding the method of determining continued competency based upon the applicant's specific circumstances. The methodology may include but is not limited to successful passage of examination(s), completion of additional training, and successful completion of a formal re-entry to practice program approved by the Board.

C.   If the Board determines that an applicant requires a period of supervised practice and/or the completion of an educational or training program, the Board may at its discretion issue the applicant a probationary license pursuant to a consent agreement or issue an applicant a temporary license in conjunction with a return to practice plan.

D.   All expenses resulting from the assessment and/or any training requirements are the sole responsibility of the applicant and not of the Board.

02-373 C.M.R. ch. 1, § 9.

### *Proceedings Before the Board*

At the time of the Board proceedings, Petitioner was a patent attorney employed by a medical device company in New Hampshire. A.R. 3, 75. Petitioner, also a physician, was issued a Maine medical license in April 2010. A.R. 3. On April 12, 2018, Petitioner filed an application to renew his Maine medical license. A.R. 4. He indicated on his application that he had not practiced clinical medicine in the past 24 months. A.R. 75.

The Board concluded that Petitioner did not meet the requirements for an active license due to his lack of recent clinical practice. A.R. 76-79. In lieu of an active license, the Board offered Petitioner an administrative license or an emeritus license, both of which Petitioner declined. A.R. 85.

On May 29, 2018, the Board issued a formal "preliminary denial" of Petitioner's renewal application. A.R. 1, 87-88. In the denial notice, the Board noted Petitioner's lack of recent practice experience and cited two statutory grounds for denying his renewal request. Specifically, the Board stated:

[1] Pursuant to 32 M.R.S. § 3282-A(2)(E), the Board may deny or refuse to renew a license, or impose other discipline for engaging in

4

conduct that evidences a lack of ability or fitness to discharge the duty owed by the licensee to patient or the general public or that evidences a lack of knowledge or inability to apply principles or skills to carry out the practice for which the licensee is licensed. [2] Pursuant to 32 M.R.S. § 3282-A(2)(H), the Board may deny or refuse to renew a license, or impose other discipline for [a] violation of a Board rule. Board Rules Chapter I, § 8(3)(A)(4) requires an applicant seeking renewal of an active license [to] demonstrate continuing clinical competency as required by Chapter 1. You have not adequately demonstrated continued competency to practice medicine.

A.R. 87.

Petitioner filed a timely intra-agency appeal, A.R. 89-93, and the Board issued a notice outlining the issues to be considered at the upcoming adjudicatory hearing. A.R. 153-54. In a pre-hearing order, the Hearing Officer Rebekah Smith, Esq., determined that Petitioner's challenges to the validity of the Competency Rule were "outside the scope of the present hearing" and "a matter for court determination." A.R. 178. The Hearing Officer subsequently issued an Evidentiary Order, dated May 5, 2019, excluding certain witnesses and exhibits proposed by Petitioner on relevance and other grounds. A.R. 314-16.

A hearing was held on May 14, 2019. For witnesses, Petitioner called the Board's investigative secretary, its licensure specialist, and its executive director. The State meanwhile called Petitioner as its sole witness. Following hearing, the Board issued findings of fact and conclusions of law.

Specifically, the Board found that: Beginning in 2008, Petitioner went to work as a patent attorney at a medical devices company in New Hampshire. A.R. 3. During his first few years of employment at the company, Petitioner engaged in part-time emergency room practice on weekends. *Id.* He eventually ceased part-time emergency room work, though he could not recall precisely when. A.R. 4. Moreover, at the time of the hearing, Petitioner did not hold staff privileges at any hospital or otherwise maintain any hospital affiliations. *Id.* Petitioner could not recall the last time he saw a patient in a clinical setting. *Id.*

The Board further found that Petitioner, by his own admission, had not

5

engaged in clinical medical practice in the previous 24 months and would not meet the requirements for reinstatement of his license. A.R. 5. Additionally, the Board emphasized that Petitioner was unwilling to perform the activities specified in the Board's reentry to practice guidelines, such as taking a special purpose examination or participating in a mini-residence or mentorship arrangement. *Id.*

Based on these findings of fact, the Board determined that nonrenewal was warranted under 32 M.R.S. § 3282-A(2)(H), which allows the Board to refuse to renew a license where the licensee is in "violation of . . . a rule adopted by the board." 32 M.R.S. § 3282-A(2)(H); A.R. 7. Specifically, the Board concluded that Petitioner failed to comply with the Competency Rule, *see* 02-373 C.M.R. ch. 1, §§ 8(3)(A)(4) & 9, because he "had not been engaged in active clinical medicine during the 24 months preceding his application and did not otherwise demonstrate continuing clinical competency." A.R. 7. The Board, however, found in Petitioner's favor with respect to the other alleged statutory ground for nonrenewal, concluding that Petitioner did not exhibit incompetence as defined in 32 M.R.S. § 3282-A(2)(E). A.R. 7.

The Board thus affirmed the preliminary denial of Petitioner's renewal application. A.R. 7. It also voted to require Petitioner to pay $1,672.50 in costs associated with the investigation and hearing. A.R. 8; *see also* 10 M.R.S. § 8003-D.

### Procedural History

On July 8, 2019, Petitioner appealed the Board's decision to this court. In addition to his Rule 80C appeal, Petitioner filed numerous independent claims against the Board and several other defendants. On motion by Defendants/Respondents, the Court dismissed all of Petitioner's independent claims, leaving only the Rule 80C appeal. *See* Order dated January 10, 2020. Petitioner then filed a series of procedural motions, including: (1) a motion to report questions of law to the Law Court, (2) a motion to reconsider the dismissal of the independent claims, (3) a motion for leave to file a second

6

amended complaint, (4) a motion to order the Board to renew Petitioner's license, (5) a motion for leave to take additional evidence and discovery, and (6) a motion to order pre-trial procedure and the taking of testimony. The Court denied all these motions. Briefing on the merits of Petitioner's Rule 80C appeal followed.

## STANDARD OF REVIEW

In this appeal, Petitioner asks the court to strike down the Competency Rule as facially invalid. Judicial review of an agency rule is governed by 5 M.R.S. § 8058—the standards of which are discussed in greater detail below.

Additionally, Petitioner challenges various aspects of the Board's proceedings and decision. The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Me. Pub. Emp. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501.

## DISCUSSION

### I. Petitioner's Challenges to the Competency Rule

As noted, the court's review of the Competency Rule is governed by 5 M.R.S. § 8058, which divides rule-based challenges into two categories: procedural and substantive. Both types of challenges are at issue here, and the court addresses them separately below.

## A. Procedural Challenges

Under section 8058, the court may declare a rule procedurally invalid in three circumstances. First the court "shall declare the rule invalid" if "the court finds that a rule exceeds the rule-making authority of the agency." 5 M.R.S. § 8058(1). Second, a rule is void per se if the agency fails to comply with certain provisions governing the rulemaking process. 5 M.R.S. §§ 8058(1), 8057(1)-(2). The violations rendering a rule per se invalid are enumerated in 5 M.R.S. § 8057(1)-(2) and "principally involve a denial of public participation." *Fulkerson v. Comm'r, Me. Dep't of Human Servs.*, 628 A.2d 661, 664 (Me. 1993).

Third, "the court may invalidate the rule" based on "any other procedural error alleged," provided "the court finds the error to be substantial and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred." 5 M.R.S. § 8058(1). Thus, errors in the rulemaking process—with the exception of the violations specified in 5 M.R.S. § 8057—are subject to "a harmless error standard similar to that employed in ordinary civil litigation." *Fulkerson*, 628 A.2d at 663.

Here, Petitioner urges the court to invalidate the Competency Rule on numerous procedural grounds. His first challenge involves the Board's compliance with the notice provisions set forth in 5 M.R.S. § 8053(1), which describes the persons to whom "the agency shall deliver ... notice" of proposed rulemaking. Among those entitled to notice is "[a]ny person specified by the statute authorizing the rulemaking." 5 M.R.S. § 8053(1)(A).

Petitioner reasons that because the Board is authorized to adopt rules governing the licensing of physicians, it must individually notify *all licensed physicians* of proposed rulemaking. The court, however, finds no requirement that notice be individually delivered to all physicians, either in section 8053 or the applicable enabling statute. While licensed physicians may be the proper subjects of the Board's rulemaking authority, they are not "specified" as persons entitled to notice of proposed rulemaking. Indeed, 32 M.R.S. § 3269—

the enabling statute that vests the Board with rulemaking power—is silent regarding the issue of notice. Thus, the Board had no statutory obligation to individually notify all licensed physicians as they are not "person[s[ specified by the statute authorizing the rulemaking." 5 M.R.S. § 8053(1)(A); 32 M.R.S. § 3269.

Petitioner next faults the Board for failing to comply with the citation requirements of 5 M.R.S. §§ 8057-A and 8063-B. *See* 5 M.R.S. § 8057-A(4) ("At the time of adoption of any rule, the agency shall file with the Secretary of State . . . citations for up to 3 primary sources of information relied upon by the agency in adopting the rule"); 5 M.R.S. § 8063-B ("For every rule proposed by an agency . . . the agency shall file with the Secretary of State citations for up to 3 primary sources of information relied upon by the agency in developing the proposed rule"). Petitioner cannot prevail on this claim, even assuming the issue is reviewable.[1] The alleged citation error is not a procedural deficiency that renders a rule automatically void. 5 M.R.S. §§ 8057(1)-(2), 8058. Thus, to prevail, Petitioner must demonstrate that the error is "substantial and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred." 5 M.R.S. § 8058(1). Petitioner has not made such a showing. The court has no basis to believe that the rule would have been different but for the Board's failure to file primary source information with the Secretary of State. As such, the court finds Petitioner's procedural challenges unconvincing.

*B. Substantive challenges.*

Under section 8058, the court's "substantive review of [a] rule shall be to determine whether the rule is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 M.R.S. § 8058. Here, Petitioner challenges the substantive validity of the Competency Rule, asking the court to find it facially unconstitutional. Among other arguments, Petitioner contends

---

[1] The parties dispute whether the alleged citation deficiencies are subject to judicial review.

that the Competency Rule is void for vagueness and violates the Equal Protection Clause.

Vagueness. First, Petitioner argues that the rule gives the Board unfettered discretion to decide whether to renew the licenses of applicants who have not engaged in the active practice of clinical medicine in the last two years. Moreover, Petitioner contends that the rule fails to provide any guidance regarding how an applicant may demonstrate continuing clinical competency. These arguments are rooted in the void for vagueness doctrine.

"A 'void for vagueness' claim is based on the due process protections set forth in the United States and Maine Constitutions and focuses on the need for adequate notice." *Doane v. HHS*, 2021 ME 28, ¶ 17, 250 A.3d 1101. "[T]hose subject to sanction by law [must] be given fair notice of the standard of conduct to which they can be held accountable." *Town of Baldwin v. Carter*, 2002 ME 52, ¶ 10, 794 A.2d 62 (quotation marks omitted). A provision is unconstitutionally vague "when its language either forbids or requires the doing of an act in terms so vague that people of common intelligence must guess at its meaning, or if it authorizes or encourages arbitrary and discriminatory" decision-making. *Id.* (citations and quotations omitted).

In this case, Petitioner has not convinced the court that the Competency Rule is unconstitutionally vague. The Competency Rule provides fair notice that the Board will engage in case-by-case scrutiny of licensees who have not actively practiced in the last two years. It also provides specific examples of the ways in which an applicant may demonstrate continuing clinical competency, including "successful passage of examination(s), completion of additional training, and successful completion of a formal re-entry to practice program approved by the Board." 02-373 C.M.R. ch. 1, § 9(1)(B). The Competency Rule therefore conveys a sufficiently accurate concept of the types of actions required to demonstrate continuing clinical competency to the Board.

Additionally, although the rule gives the Board considerable discretion, that discretion is guided by the examples set forth in section 9(1)(B). The court also notes that some latitude on the part of the Board is warranted and that

overly precise standards would be unworkable in this context. *See Doane*, 2021 ME 28, ¶ 27, 250 A.3d 1101. Indeed, a licensee's circumstances and educational needs are likely to vary significantly, requiring a discretionary approach to the determination of continuing clinical competency. And to the extent Petitioner raises concerns regarding the arbitrary exercise of that discretion, those fears are mitigated by the procedural safeguards provided by the Administrative Procedures Act ("APA"), including judicial review of the Board's decisions. *See id.* ¶ 22 (explaining that the APA's safeguards assuaged void for vagueness concerns regarding the possibility of arbitrary administrative decision-making).

Equal Protection. Petitioner further argues that the rule violates the Equal Protection Clause because other health care providers—including osteopathic physicians, nurses, and dentists—are not subject to the requirements of the Competency Rule. The Equal Protection Clause "prohibits any state from denying to any person within its jurisdiction the equal protection of the laws, and requires, generally, that persons similarly situated be treated alike." *MSAD 6 Bd. of Dirs. v. Town of Frye Island*, 2020 ME 45, ¶ 41, 229 A.3d 514. Where, as here, "'the government action does not implicate either a fundamental right or a suspect class, the different treatment accorded to similarly situated persons need only be rationally related to a legitimate state interest.'" *Id.*

"Under this standard of review, government action 'bears a strong presumption of validity.'" *Id.* ¶ 42. It is generally presumed that governmental actors "'have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.'" *Id.* "The party challenging the government action must show 'that there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals.'" *Id.*

Petitioner cannot satisfy such a showing. It is undeniable that the State has a legitimate interest in ensuring that physicians licensed to practice in Maine are competent. Moreover, as the Board found during the rulemaking

11

process: "[C]linical skills rapidly decline following a break from clinical medicine, which poses a risk to the safety of the public should an applicant or a licensee seek to return to clinical practice after an extended period and/or without remedial education and training." A.R. 460. The Competency Rule's requirement that an applicant make an affirmative showing of competency after two years or more of non-practice is plainly rationally related to the legitimate state interest in safeguarding the public from incompetent physicians.

That the Competency Rule applies only to physicians (and not osteopathic physicians, nurses, and dentists) does not make the rule constitutionally infirm. Petitioner's contentions to the contrary are disposed of by *Semler v. Oregon State Bd. of Dental Examiners*, 294 US 608, 610 (1935). There, the Supreme Court held that the plaintiff, a dentist, lacked

> any ground for objection because the particular regulation is limited to dentists and is not extended to other professional classes. The State was not bound to deal alike with all these classes, or to strike at all evils at the same time or in the same way. It could deal with the different professions according to the needs of the public in relation to each."

*Id.*; *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955).

Thus, under the lenient rational basis standard, physicians may be regulated differently than other classes of healthcare professionals without running afoul of the Equal Protection Clause. *See Beaulieu v. Lewiston*, 440 A.2d 334, 339 (Me. 1982) ("'the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all'"). Petitioner's attacks on the Competency Rule fail.

## II. Petitioner's Challenges to the Board Proceedings and Nonrenewal Decision.

Petitioner next argues that even if the Competency Rule is facially valid, relief is still warranted because the Board committed multiple errors during the agency proceedings below. The court concludes that the Board acted lawfully and appropriately. Contrary to Petitioner's suggestions, the Board did not employ an unconstitutional presumption or apply the Competency Rule in an

12

unlawfully retroactive manner. Nor did it err when it limited the scope of the hearing and refused to entertain Petitioner's facial challenges to the Competency Rule.

Unconstitutional Presumption. Petitioner argues that the procedure followed by the Board violated his due process rights because it created a "presumption of incompetence" that he was required to rebut. According to Petitioner, the State should bear the burden of affirmatively proving that a licensee is incompetent if it wishes to deny a renewal application.

"Laws establishing presumptions have been held to violate the due process clause of the United States Constitution where the presumption is irrebuttable and not necessarily true in fact and the State has reasonable alternatives in making the determination." *Vlandis v. Kline*, 412 U.S. 441, 451 (1973). That is not the case here. To the extent the Board applied the Competency Rule so as to create a presumption of nonrenewal for licensees out of practice for more than two years, that presumption was expressly rebuttable. *See* 02-373 C.M.R. ch. 1, § 9(1)(A) (requiring licensees subject to the competency rule to "adequately demonstrate[]" continued competency to the Board). Moreover, while Petitioner may have been required to produce some evidence of continuing clinical competency, the ultimate burden of proof remained with the State to demonstrate one of the statutory grounds for nonrenewal set forth in 32 M.R.S. § 3282-A(2); *see also In re Child of Ryan F.*, 2020 ME 21, ¶ 26, 224 A.3d 1051.

Petitioner suggests that it was "impossible" for him to rebut the presumption and demonstrate his competency at the hearing before the Board. The court observes, however, that Petitioner made little, if any, effort to make such a showing. And when asked by a Board member whether he would be willing to undergo an independent assessment of his clinical knowledge, Petitioner answered in the negative, describing the proposal as "absolutely ridiculous." A.R. 18-19. Given these circumstances, the court is not convinced that a due process violation occurred.

13

Retroactivity. Next, Petitioner argues that the Board retroactively applied the Competency Rule to his renewal application in violation of his constitutional rights. While it is true that the government has "no constitutional power to enact retrospective laws which impair vested rights," *NECEC Transmission LLC v. Bureau of Parks & Lands*, 2022 ME 48, ¶ 39, 281 A.3d 618, the court concludes that Petitioner's constitutional rights were not violated here.

The Board acted properly by applying the Competency Rule as a condition for issuing Petitioner his renewed license and relying on the laws in effect at the time Petitioner submitted his renewal application. Petitioner does not hold a legitimate claim of entitlement to the continued re-issuance of his license under the regulations in existence at the time he received his initial license. There is no statutory suggestion that licensing criteria will remain static. To the contrary, medical licenses expire and must be renewed every two years, thereby subjecting licensees to biennial scrutiny under the laws then-existing. 32 M.R.S. § 3280-A.

Furthermore, as the Board points out, courts elsewhere have rejected similar challenges to laws that have changed professional licensure requirements. *E.g., Ficarra v. Dep't of Regulatory Agencies, Div. of Ins.*, 849 P.2d 6, 19-22 (Colo. 1993); *Brown v. McGarr*, 774 F.2d 777, 782-85 (7th Cir. 1985). These cases recognize that private interests in a professional license will sometimes yield to licensure laws—like the Competency Rule—that are rationally related to protecting public health and safety. *Ficarra*, 849 P.2d at 21-22; *Brown*, 774 F.2d at 782-85.

Scope of the Hearing. Petitioner further takes issue with the Hearing Officer's determination that his procedural and substantive challenges to the Competency Rule were beyond the scope of the Board hearing. The court rejects this argument as the Board lacked the authority to strike the rule down as facially invalid. The Board is a creation of statute, and its jurisdiction is limited. *See* 32 M.R.S. § 3269. The APA, meanwhile, expressly sets forth the avenue by which an aggrieved person may challenge the facial validity of a rule:

14

Judicial review pursuant to section 8058. *See* 5 M.R.S. § 8058 (allowing aggrieved persons to bring pre- and post-enforcement challenges to agency rules); *see also Conservation Law Found. v. Dep't of Envtl. Prot.*, 2003 ME 62, ¶ 20, 823 A.2d 551.

Moreover, many of Petitioner's challenges to the rule are constitutional in nature. And as the Supreme Court has observed: "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures." *Califano v. Sanders*, 430 U.S. 99, 109 (1977); *accord Colo. Dep't of Pub. Health & Env't v. Bethell*, 60 P.3d 779, 785 (Colo. App. 2002) ("administrative agencies lack jurisdiction to decide the constitutionality of statutes or regulations"). Thus, the agency appropriately declined to entertain Petitioner's facial challenges to the rule.

Finally, the court notes that Petitioner has raised numerous additional challenges to the Competency Rule and the Board proceedings. The court has considered these arguments and finds them unpersuasive. The court sees no basis for invalidating the rule or disturbing the decision of the Board.

## CONCLUSION

The entry is: The Competency Rule, *see* 02-373 C.M.R. ch. 1, § 9, is **valid** and the Board's decision denying Petitioner's license renewal application is **affirmed**.

The Clerk shall enter this Order upon the docket by reference.

Dated: January 25, 2023

Deborah P. Cashman
Justice, Maine Superior Court

15